DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 1:06CR0395 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DONNA MOONDA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is the government's motion in limine to exclude expert testimony of Dr.

Solomon Fulero on eyewitness identification (Doc. No. 205) and the defendant's brief in support

of eyewitness expert (Doc. No. 222).  For the reasons discussed below, the government's motion

in limine is granted with the understanding that the Court reserves the right to revisit this

decision in its discretion.

## I. DISCUSSION

In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), the Supreme Court set

out what is required to determine whether an expert witness should be allowed to testify during a

trial.  The 2000 amendment to Federal Rule of Evidence 702 incorporated the requirements from

the Daubert decision and resulted in the following: in order to use an expert to testify to educate

the fact-finder on general principles, it is required that (1) the expert be qualified, (2) the

testimony address a subject matter on which the fact-finder can be assisted by an expert, (3) the

testimony be reliable, and (4) the testimony fit the facts of the case.  Fed. R. Evid. 702 advisory

committee's note (2000 amendments).  Daubert made clear that Rule 702  "assign[s] to the trial

(1:06CR0395)

judge the task of ensuring that an expert's testimony both rests on a reliable foundation *and* is relevant to the task at hand." 509 U.S. at 597. (Emphasis added.)

### A. RELIABILITY

The first step in the <u>Daubert</u> analysis, ensuring that an expert's testimony  rests on a reliable foundation, considers factors such as whether the expert is qualified, whether the testimony is reliable, and whether the reasoning or methodology relied on is scientifically valid. <u>U.S. v. Smithers</u>, 212 F.3d 306, 315 (6th Cir. 2000).  In <u>U.S. v. Smith</u>, 736 F.2d 1103 (6th Cir. 1984), the court found that "the day may have arrived...when Dr. Fulero's testimony can be said to conform to a generally accepted explanatory theory."  <u>Id</u>. at 1107.  In fact, the government in the instant case does not dispute that Dr. Fulero is qualified as an expert, nor that his two-page summary regarding the factors affecting reliability of identification testimony is scientifically valid.  (Gov't Mot. to Suppress Expert Test. 7.)  In <u>U.S. v. Langan</u>, 263 F.3d 613 (6th Cir. 2001), the court refers to Dr. Fulero as "the expert in <u>Smithers</u>, whose 'qualifications and scientific methods' [have] already been 'praised' by the Sixth Circuit."  <u>Id</u>. at 623 (citing <u>Smithers</u>, 212 F.3d at 315).  Dr. Fulero and his methods easily satisfy the first <u>Daubert</u> requirement for reliability.

### B. RELEVANCE

The second step in the <u>Daubert</u> analysis, ensuring that the expert's testimony is relevant to the task at hand, considers whether the reasoning underlying the testimony "properly could be applied to the facts at issue to aid the trier of fact." <u>Smithers</u> 212 F.3d at 315.  This second step includes analyzing whether the testimony "fits" the facts of the case and whether the testimony

2

(1:06CR0395)

addresses a subject matter on which the fact-finder can be assisted by an expert.  Fed. R. Evid.

702.  In the instant case there is no dispute as to the scientific validity of the principles upon

which Dr. Fulero's testimony would be based.  However, there is a dispute as to whether those

principles can be adequately applied to the particular facts of the instant case and whether the

expert's testimony would help the jury.

1. THE TESTIMONY DOES NOT "FIT" THE FACTS OF THE CASE

"The trial judge must determine whether the testimony has a 'reliable basis in the

knowledge and experience of [the relevant] discipline.'" Smithers, 212 F.3d at 314 (citation

omitted).  In general, expert testimony regarding eyewitness identification addresses a situation

in which a witness has identified, accurately or inaccurately, a defendant as the perpetrator of a

crime.  In the instant case, the expert testimony would address a situation in which the defendant

*failed* to identify the perpetrator of a crime, even though it was someone she knew.  The issue is

whether the same scientifically evaluated factors that are relevant to a witness mistakenly

identifying someone as the perpetrator of a crime are also relevant to a witness' ability to

recognize the perpetrator of a crime who is well-known to her.

The defendant argues that the same factors that are relevant to identification of an

unknown person, such as stress of the particular situation and noise level, are relevant to the

failure to identify a known person.  Defendant argues that, since the same factors that can

explain a false identification can also explain a failure to identify someone, Dr. Fulero's

testimony meets the "fit" requirement under the Daubert analysis and should be admitted.  The

government, however, accurately points out that in cases where expert testimony such as Dr.

3

(1:06CR0395)

Fulero's is used, the defense usually produces the testimony to impeach an identification made by an eyewitness. In the instant case, the defense would not be producing the testimony to impeach an identification made by an eyewitness, but rather would be producing the testimony to rebut the implication that because the defendant could not identify her husband's assailant, even though she knew him, she must have lied to the police when she described the assailant.  The government argues that this prevents the "fit" that is necessary under the Daubert analysis.

During the Daubert Hearing, Dr. Fulero testified that "the same factors apply whether the witness claims that it's somebody they know or someone they didn't know."  (Daubert Hr'g Tr., June 6, 2007, 16.)  However, "if the expert cannot tie his assessment of data to known scientific conclusions, based on research or studies, then the expert's opinion should not be placed before the jury...[and] unsupported speculation should be ruled out."  Bradley v. Brown, 852 F.Supp. 690 (N.D. Ind. 1994), aff'd 42 F.3d 434, 441 (7th Cir. 1994).  Although studies involving eyewitness identification have been recognized by courts as scientifically valid, this Court has not been made aware of any scientific studies in which failure to identify known individuals has been tested.  During the Daubert Hearing, Dr. Fulero described the "typical demonstration" that illustrates the weaknesses of eyewitness identifications in which somebody runs into a room and steals something in front of a group of people and then those people are asked to describe the "thief."  (Daubert Hr'g Tr. 11.)  When asked by the Court if there were any studies in which the thief who runs into the room also happens to be well-known to the group of people waiting in the room, Dr. Fulero advised there were not.  (Daubert Hr'g Tr. 15.)

In U.S. v. Langan, 263 F.3d 613 (6th Cir. 2001), a case in which the defendant was

4

(1:06CR0395)

convicted of robbing two banks, the trial court excluded expert testimony of a psychologist

regarding eyewitness identification.  The Court of Appeals found no abuse of discretion when

the trial court concluded the fact that the expert's methodology had never included a victim or an

eyewitness to a bank robbery in his studies "undermined the scientific underpinnings of [his]

proffered opinion" in the case. Id. at 623.  Similarly, the fact that Dr. Fulero is not basing his

opinion on any studies that have directly dealt with failure to identify well-known individuals

undermines the "fit" of his science to the facts of the instant case.

### 2. THE TESTIMONY WILL NOT ASSIST THE TRIER OF FACT

In Daubert, the Court defines relevant evidence as "that which has any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable

or less probable than it would be without the evidence." 509 U.S. at 587.  Because "the jury may

be called upon to decide whether or not [the defendant] misidentified the assailant in this case

either purposefully or innocently," defendant argues Dr. Fulero's testimony could help the jury

to make this determination.  (Def.'s Br. in Supp. of Eyewitness Expert.)  In U.S. v. Smith, 736

F.2d 1103 (6th Cir. 1984), the Sixth Circuit advised that "there is no more certain test for

determining when experts may be used than the common sense inquiry of whether the untrained

layman would be qualified to determine intelligently and to the best possible degree the

particular issue without enlightenment from those having a specialized understanding of the

subject involved in that dispute." Id. at 1105.  The issue in the instant case then, is whether Dr.

Fulero's testimony will convey something to the jury without which it could not fully evaluate

whether to believe the defendant's failure to identify her husband's attacker was innocent or

5

(1:06CR0395)

purposeful.

The defendant argues that the jury cannot draw a proper inference from the evidence submitted by the government (the interview of defendant in which she fails to identify her husband's attacker) without first being made aware of the misconceptions many people have regarding the accuracy of eyewitness identification.  In Langan, however, while admitting that expert testimony on eyewitness identification might inform the jury on the "intricacies of perception, retention and recall," the Sixth Circuit wrote "we nevertheless agree with the district court that the hazards of eyewitness identifications are within the ordinary knowledge of most lay jurors."  263 F.3d at 624. If the hazards of eyewitness identifications are within the ordinary knowledge of most people, then Dr. Fulero's testimony will not convey much to the jury that is essential to its deciding whether to believe the defendant's failure to identify her husband's attacker was innocent or purposeful.

Furthermore, "the relevant fact that the defendant expects to explicate with expert testimony is not the crucial or sole evidence of [defendant's] guilt."  (Gov't Mot. to Exclude Expert Test. 13.)  In Langan, the Sixth Circuit Court of Appeals found that the trial court's exclusion of expert testimony regarding the reliability of eyewitness identification was within its discretion largely because "a substantial amount of other evidence linked" the defendant to the crime he was accused of committing, other than the eyewitness testimony.  263 F.3d at 624.  The Sixth Circuit has found that eyewitness expert testimony is most appropriate in situations in which eyewitness testimony is the crucial, if not sole basis for a defendant's conviction. Smithers,  212 F.3d at 317.  Because the inference that the government wishes to be drawn from

6

(1:06CR0395)

defendant's interview is not crucial to the government's case, nor the sole evidence of

defendant's guilt, Dr. Fulero's testimony is not necessary.

## II. CONCLUSION

Dr. Fulero's testimony does not adequately "fit" the facts of this case, and therefore does

not satisfy the first prong of the relevance requirement of the Daubert test.  Also, Dr. Fulero's

testimony is unnecessary for the jury to determine whether an inference should be drawn from

the interview introduced by the government, such inference being neither crucial to, nor the sole

basis for, the government's case against defendant.  Therefore, the testimony does not satisfy the

second prong of the relevance requirement of the Daubert test.  As Dr. Fulero's testimony

satisfies neither prong of Daubert's relevance requirement, the testimony is unnecessary and will

be excluded from the trial.

For the reasons discussed herein, the government's motion in limine to exclude expert

testimony on eyewitness identification is granted with the understanding that the Court reserves

the right to revisit this decision in its discretion.

IT IS SO ORDERED.

   June 28, 2007                          *S/ David D. Dowd, Jr.*
Date                                     David D. Dowd, Jr.
                                         U.S. District Judge

7